**ORDER OF RAILROAD TELEGRAPHERS v. NEW YORK CENT. R. CO. (BUFFALO AND EAST).**

No. 166, Docket 21561.

United States Court of Appeals Second Circuit.

Argued Feb. 2, 1950.

Decided March 30, 1950.

Lester P. Schoene, John F. Davis, and Schoene, Freehill, Kramer & Davis, of Washington, D. C., and Charles S. Corben, of New York City, attorneys for appellant.

Frederick L. Wheeler, New York City, Gerald E. Dwyer and James L. More, New York City, of counsel, attorney for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents the novel question whether a Board of Arbitration which has made an award pursuant to the Railway Labor Act, 45 U.S.C.A. § 151 et seq., loses jurisdiction to interpret the award once its terms have been incorporated into a collective bargaining agreement. If jurisdiction does exist, we must also determine whether the interpretations in issue are invalid because they amend rather than interpret the original award.

The facts underlying the controversy are not in dispute. The Order of Railway Telegraphers, which we shall call the Order, represents certain employees of the New York Central Railroad Company (Buffalo and East). On April 30, 1945 the Order demanded changes in certain of the rules promulgated under a collective bargaining agreement then in existence between it and

the Railroad. Negotiations between the parties resulted in agreement on most of the proposed new rules. There remained, however, an area of disagreement. The Order invoked the services of the National Mediation Board, which brought about agreement on about half of the remaining proposed rules. That left seven rules still in dispute. These the parties voluntarily submitted to arbitration pursuant to an arbitration agreement entered into on March 19, 1948, in accordance with Section 8 of the Railway Labor Act, 45 U.S.C.A. § 158. A Board of Arbitration was duly appointed, held hearings, took voluminous testimony, and, on June 24, 1948, made an award covering the seven rules in dispute. The award was filed in the Clerk's Office of the District Court pursuant to 45 U.S.C.A. § 159 and no petition to impeach it was brought by either party. On July 1, 1948, the terms of the award were incorporated, together with other terms previously agreed upon, into a collective bargaining agreement. The agreement did not conclude the controversy. The parties were unable to agree on the meaning and application of two of the rules awarded by the Board. After inconclusive negotiations, the Railroad applied to the National Mediation Board, asking that the Board of Arbitration be reconvened in order to interpret the ambiguous rules. 45 U.S.C.A. § 157(c). The Order objected to this procedure, insisting that the Board had ceased to retain

jurisdiction to interpret the award after its terms had been incorporated into the agreement of July 1, 1948. The Mediation Board, on October 21, 1948, notified the parties that it had decided to reconvene the Board of Arbitration but did not specifically rule that the arbitrators retained jurisdiction. The arbitrators reconvened, held hearings and, on January 15, 1949, issued rulings on the meaning and application of the disputed provisions of their award. This the Arbitration Board did without ruling on its jurisdiction, which it assumed existed because it had been reconvened by the National Mediation Board. Therefore there is no administrative ruling on the issue of jurisdiction. And the Mediation Board, which intervened in the proceeding below, professed to stand "neutral" on the issue of jurisdiction. We are consequently faced, as was the court below, with a case of first impression without guideposts other than the terms of the Railway Labor Act and of the arbitration agreement.

The crux of the matter is whether the award remained in effect after its terms were incorporated into the contract between the parties. If it did, the Board of Arbitration clearly had jurisdiction to pass on its meaning and application. The procedure followed here was in strict accordance with 45 U.S.C.A. §§ 155, Third (d), 157, Third (c), and 158(m), set out in the margin.[1] These sections provide a method for reconvening the arbitrators to pass upon

1. "Sec. 155, Third (d). Either party to an arbitration desiring the reconvening of a board of arbitration to pass upon any controversy arising over the meaning or application of an award may so notify the Mediation Board in writing, stating in such notice the question or questions to be submitted to such reconvened Board. The Mediation Board shall thereupon promptly communicate with the members of the Board of Arbitration, or a subcommittee of such Board appointed for such purpose pursuant to a provision in the agreement to arbitrate, and arrange for the reconvening of said Board of Arbitration or subcommittee, and shall notify the respective parties to the controversy of the time and place at which the Board, or the subcommittee, will meet for hearings upon the matters in controversy to be submitted to it. No

evidence other than that contained in the record filed with the original award shall be received or considered by such reconvened Board or subcommittee, except such evidence as may be necessary to illustrate the interpretations suggested by the parties. If any member of the original Board is unable or unwilling to serve on such reconvened Board or subcommittee thereof, another arbitrator shall be named in the same manner and with the same powers and duties as such original arbitrator."

"Sec. 157 Third (c). Duty to reconvene; questions considered

"Upon notice from the Mediation Board that the parties, or either party, to an arbitration desire the reconvening of the board of arbitration (or a subcommittee of such board of arbitration appointed for such purpose pursuant to the agree-

the meaning and application of their award. Furthermore, these statutory provisions are reflected in Article "Fifteenth" of the arbitration agreement between the parties, in accordance with 45 U.S.C.A. § 158(m), which provides

"Any difference arising as to the meaning, or the application of the provisions, of an award made by a board of arbitration shall be referred back for a ruling to the same board * * * and that such ruling, when acknowledged in the same manner, and filed in the same district court clerk's office, as the original award, shall be a part of and shall have the same force and effect as such original award."

The Act directs that the agreement to arbitrate "Shall * * * fix the period during which the award shall continue in force"; 45 U.S.C.A. § 158(j). The parties could have fixed a termination date for the award. Instead, they provided in Article "Eleventh" of their arbitration agreement that the award "shall continue in effect in accordance with the provisions of the Railway Labor Act, as amended." The Order has been unable to point out, and we have been unable to discover, any provision of the Act which causes the award to expire when its terms have been incorporated into a contract. It is argued that a separate procedure, culminating in recourse to the Railroad Adjustment Board, is appropriate to disputes involving agreements, as opposed to awards; that the disputed rules ceased to be part of an award and became part of an agreement after July 1, 1948; and that the procedure followed in this case trenches on the province of the Adjustment Board. We are not persuaded by this argument. Nothing in 45 U.S.C.A. § 153, First (i),[2] cited by the Order, suggests that provisions of an award incorporated into an agreement must be interpreted by the Adjustment Board and by no one else. Indeed, the Order concedes that recourse to the Adjustment Board is voluntary. We see no evidence that Congress intended to foreclose other avenues for settling disputes once a contract was signed.

The Order contends that to permit the arbitrators to make interpretations after a contract has been signed is to force the parties to undergo a continuing process of compulsory arbitration, contrary to the spirit of the Railway Labor Act. The short answer is that the only compulsion is that to which the parties have bent themselves by failing to provide in the arbitration agreement for a date or event on which termination of the award's effect should be conditioned. We cannot share the Order's apprehensions that a decision sustaining the Board's jurisdiction in this case will operate to upset the delicate balance of alternative procedures available for settling disputes under the Act. The Act leaves it for the parties to decide for themselves how long

ment to arbitrate) to pass upon any controversy over the meaning or application of their award, the board, or its subcommittee, shall at once reconvene. No question other than, or in addition to, the questions relating to the meaning or application of the award, submitted by the party or parties in writing, shall be considered by the reconvened board of arbitration or its subcommittee."

"Sec. 158. The agreement to arbitrate —* * *

"(m) Shall provide that any difference arising as to the meaning, or the application of the provisions, of an award made by a board of arbitration shall be referred back for a ruling to the same board, or, by agreement, to a subcommittee of such board; and that such ruling, when acknowledged in the same manner, and filed in the same district court clerk's office, as the original award, shall be a part of and shall have the same force and effect as such original award; * * *"

2. "Sec. 153 (i). The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

and under what conditions an arbitration award shall remain in effect. As they have not made a choice, it is not for us arbitrarily to make one for them. Accordingly, we hold that the Arbitration Board retained jurisdiction to issue an interpretation covering the meaning and application of the provisions of its award here in issue, notwithstanding that those provisions had been incorporated into a collective bargaining agreement.

■ The next question is whether the Arbitration Board went beyond its jurisdiction with respect to the specific interpretations issued. The Act confines them, generally, to the stipulations of the agreement to arbitrate and, as to interpretations, to the meaning and application of the award.[3] And if any portion of their award is invalid, the court which considers the petition for impeachment is directed by 45 U.S.C.A. § 159, Fourth,[4] to set aside the entire award. The Order contends that the answers to all three questions submitted for interpretation went beyond the terms of the award in that they amended rather than interpreted the original award. Questions 1 and 3 related to Article 1, the scope rule of the original award. The answers given are so obviously confined to interpreting the original award that no protracted discussion of them is required. The answer to Question 1 merely reaffirms the position taken in the original award that the Board could make no award with respect to employees not represented by the Order. The answer to Question 3 clarifies what employees were included in the scope rule. The phrase in issue is "as shown in the attached wage scale." The Order contended that this embraced only operators of printer, teletype and similar machines. The Railroad maintained that it meant all occupations listed. The Board's interpretation ruled that the words referred only to those categories of employees in dispute under the arbitration. That was clearly interpretation and, by its very terms, confined to the scope of the original award.

■ Question 2 relates to Article 22 of the original award, dealing with train orders. The original award said: "No employee other than covered by this Agreement and train dispatchers will be permitted to handle train orders except in cases of emergency." The question is whether Form M is a train order. Form M is used by the operator of a track motor car to get clearance for the use of the track or to report that he is off the track. The award did not say in terms whether Form M was or was not a train order. The interpretation held that where Form M was filed in connection with a call from a point where a telegrapher was available, his services should be used; otherwise, the motor car operator might himself file the Form M. The Order points out that this can be justified as an interpretation only if the language of the original award is construed to mean that Form M is a train order where a telegrapher is available and is not a train order when a telegrapher is not available. That is perfectly true, but it does not follow from that fact that the interpretation did any more than supply a specific application of the award. That is the way we read it. The answer to Question 2, like those given to Questions 1 and 3, was a permissible interpretation of the original award, and the Board of Arbitration did not exceed its authority in rendering it. The petition to impeach the interpretations was properly denied.

Affirmed.

---

3. 45 U.S.C.A. §§ 157, Third (c) and 159, Third (b).

4. "Fourth. If the court shall determine that a part of the award is invalid on some ground or grounds designated in this section as a ground of invalidity, but shall determine that a part of the award is valid, the court shall set aside the entire award: Provided, however, That, if the parties shall agree thereto, and if such valid and invalid parts are separable, the court shall set aside the invalid part, and order judgment to stand as to the valid part."