The **KANSAS CITY SOUTHERN RAILWAY COMPANY** et al., Plaintiffs,

v.

**BROTHERHOOD OF RAILROAD TRAINMEN** et al.,
Defendants.

No. 16689–1.

United States District Court
W. D. Missouri, W. D.

Nov. 10, 1969.

because the award failed to identify with sufficient certainty the claimants or the amounts of money to which they are entitled; and (3) because the awards require the payment of penalties. We are of the present judgment that none of those contentions is tenable.

Board No. 282 issued an award on November 26, 1963 which established specific proposals for railroad firemen, but recognized that the issue of crew-consist (the one presently before us) would be best resolved locally. The award of Board No. 282 remanded the issue of crew-consist "to the local properties for negotiation." Section III A(1). The parties before the Court negotiated and reached an agreement settling the dispute on September 4, 1964. Complaint Exhibit F.[2]

The litigation before us originated when employees filed claims for alleged failure of the railroad to comply with the September 4, 1964 agreement and previous collective bargaining agreements.

On November 12, 1965 the railroad submitted six questions to Board No. 282. Four of those questions submitted are identical to questions later submitted to Board No. 148 in cases 1, 2, 3, and 4. Board No. 282 never answered the questions presented to it. On June 27, 1966 the plaintiffs by D. E. Farrar wrote BRT indicating KCS's willingness to submit to Board No. 148 "the questions which were previously submitted by the carriers to Arbitration Board No. 282." Mr. Farrar proposed that the submission was to be "without in any

Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for plaintiffs.

John H. Haley, Jr., Haley & Bardgett, St. Louis, Mo., for defendants.

### MEMORANDUM AND ORDER DIRECTING FURTHER PROCEEDINGS

#### I.

JOHN W. OLIVER, District Judge.

The undisputed factual situation establishes that the parties, subsequent to the Supreme Court's decision in Gunther v. San Diego A. E. R., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), and subsequent to the effective date of the 1966 amendments of the Railway Labor Act, submitted particular disputes to a voluntary board of adjustment (Board No. 148), established by an agreement dated May 23, 1956 made pursuant to Section 153 Second, Title 45, United States Code, as that section read before its 1966 amendment.[1] The May 23, 1956 agreement provided that the awards of the Board No. 148 thus created "shall be final and binding upon all parties to the dispute."

KCS contends that the awards of Board No. 148 are not enforceable (1) because in rendering the awards Board No. 148 encroached upon the jurisdiction of Arbitration Board No. 282 established by Pub.L. 88–108, 77 Stat. 132; (2)

1. The parties' submission was made after the Supreme Court's 1957 decisions in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); General Electric Co. v. Local 205, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); and Goodall-Sanford v. United Textile Workers, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); and after the 1960 Steelworkers trilogy of United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Those cases, although in an area of labor law other than the Railway Labor Act, articulated the controlling federal policy applicable to the enforcement of voluntary arbitration agreements.

2. If parties could not reach an agreement, Section III(B) (1) of the Award became applicable.

manner waiving either of those two avenues of handling [insistence that Board No. 282 reconvene or file an action before Judge Holtzoff], and only for the purpose of expediting the concluding of the questions represented by the [employees'] claims referred to." The Brotherhood, by H. E. Nelson, agreed to the submission of the questions to Board No. 148, but it specifically refused to make such submission conditionally. Mr. Nelson's letter of July 12, 1966 expressly stated that he wished to make it quite clear that "I do not subscribe to your contention that you could legally or otherwise reconvene Arbitration Board No. 282 or obtain a ruling from Judge Holtzhoff to determine the questions involved."

Nothing more was said about those matters for the time being and the parties submitted the questions to Board No. 148 without any reservation being made by either party.

Board No. 148 heard the six cases on January 16 and 19, 1967. On those dates the causes were argued orally. Counterclaim Para. 30 and Reply to Counterclaim Para. 11. A proposed award [reaching the same result as that finally reached] was mailed to the parties on April 6, 1967. Subsequently, plaintiffs, for the first time, contended that Board No. 148 was without jurisdiction because it encroached on the jurisdiction of Board No. 282. The neutral considered that contention and determined it to be without merit. Plaintiffs make the same contention in this Court. That contention is tenable only if it must be said that Board No. 282 had exclusive jurisdiction to interpret that part of its award which was incorporated in the parties' September 4, 1964 agreement. If Board Nos. 148 and 282 may be said to have concurrent jurisdiction (or obviously if Board No. 148 had exclusive jurisdiction) the award of Board No. 148 must be determined to be valid, so far as plaintiffs' first contention is concerned.

The September 4, 1964 agreement incorporated provision (D (2)) from Article III of the award made by Arbitration Board No. 282 as a part of that agreement. The parties also agreed that "they will be governed by interpretations of the Arbitration Board with respect to questions dealing with the extent of imposition of the Award upon seniority of protected employees."

■ The fact that the parties incorporated a portion of the award of Board No. 282 into their agreement of September 4, 1964 and also agreed to be governed by any subsequent interpretations which Board No. 282 may make of its award does not support the notion that Board No. 282 has exclusive jurisdiction to interpret its award. More particularly, it does not mean that Board No. 148 was deprived of power and jurisdiction to finally decide the disputes voluntarily submitted to it by the parties. Cf. Illinois Central R. Co. v. Brotherhood of Railroad Trainmen (7th Cir.1968), 398 F.2d 973 at 979.

Order of Railroad Telegraph v. New York Cent. R. Co. (2nd Cir.1950), 181 F.2d 113, presented the question of whether a Board of Arbitration, convened in accordance with Section 8 of the Railway Labor Act, lost jurisdiction to interpret its award because the parties had incorporated an award of such a board into a collective bargaining agreement. It was argued in that case that a dispute concerning the meaning of such collective bargaining agreement (which incorporated the arbitration award) could only be decided by a Board of Adjustment established under Section 153 First "and by no one else." The court rejected the implicit "exclusive jurisdiction" argument by stating that "we see no evidence that Congress intended to foreclose other avenues for settling disputes once a contract was signed."

Certain language in Slocum v. Delaware, L. N. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), might be said to throw some doubt on that part of the rationale of Order of Railroad Telegraph v. New York Cent. R. Co. which held that a Board of Adjustment may not have exclusive jurisdiction to decide a

dispute arising out of the interpretation of a collective bargaining agreement. *Slocum* emphasized that a Section 153 First Board of Adjustment proceeding deprived a State Court of jurisdiction to act. We believe that those primarily responsible for the administration of the Railway Labor Act have recognized that there is a difference between the interpretation of the meaning of an agreement reached through mediation and the determination of disputes growing out of the interpretation of such an agreement which has been incorporated into a collective bargaining agreement. For a general articulation of the difference see In the Matter of Missouri Pacific Railroad Co. and Brotherhood of Locomotive Engineers, Interpretation No. 62, Case No. A–3094, March 31, 1958; and In the Matter of Brotherhood of Maintenance of Way Employees and Akron & Barberton Belt Railroad Co., et al., Interpretation No. 72, et al., January 14, 1959, both published in Interpretations Issued by the National Mediation Board pursuant to Section 5, Second of the Railway Labor Act—July 1, 1934—June 30, 1961, at pages 124 and 149, respectively.

Furthermore, see CCH Labor Law Reporter ¶ 6910, pages 12,217–18 which appropriately states that:

> Where an arbitration award is included in a collective bargaining agreement as part of a settlement, and thereafter a dispute over interpretation arises, the issues may be submitted either to the NRAB as a dispute concerning interpretation of rules included in a contract, or to the arbitrators as a dispute over the meaning and application of the award.

The same principle was stated and applied by Arbitration Board No. 282 in answers that Board gave, and more exactly, answers that Board refused to give, as collected in Appendix I filed by the defendants in this case. In light of the foregoing, we are convinced that the question of whether Board No. 148 may properly decide the disputes submitted to it by the parties is not governed by whether Board No. 282 might have power to interpret its own award. We need not reach the question of whether Board No. 282 could or should have answered the questions presented to it by the parties. We need only decide that Board No. 148 did have power to act independently of Board No. 282. We are presently of the view that plaintiffs' exclusive jurisdiction contention is not legally tenable.

## II.

■ Plaintiffs, in support of their contention that the awards lack sufficient certainty to permit enforcement in that they failed to identify the claimants or the amounts to which those claimants were entitled relied principally on Brotherhood of Railroad Signalmen v. Chicago, M. St. P. & R. Co. (N.D.Ill.1968), 284 F.Supp. 401; and Hanson v. Chesapeake and Ohio Railway Co. (S.D.W.Va. 1968), 291 F.Supp. 401, which followed the rationale of the former case. The Fourth Circuit reversed *Hanson* in 412 F.2d 631 (1969), after the original briefs were filed in this case. We agree with the Fourth Circuit and with Sweeney v. Florida East Coast Ry. Co. (5th Cir.1968), 389 F.2d 113, to which that circuit made reference.

It is doubtful under the circumstances of this case whether plaintiffs' contention even could be sustained under the reversed District Court decision in *Hanson*. The submission of the parties in this case (Exhibit I attached to plaintiffs' petition) shows, for example, that questions 1 to 4, inclusive, were "verbatim, items previously submitted by those carriers to Arbitration Board No. 282 but not reached by that Board prior to its discontinuing interpretive sessions." Each of the questions carried on their face specific references to the file numbers of both KCS and BRT. The amounts claimed by each claimant is identified in the files to which reference was made and are shown in each case submitted to Board No. 148 in Appendix VI attached to the stipulation of the parties.

At the evidentiary hearing scheduled by this order we shall permit defendants to prepare and file an appropriate exhibit setting forth the names of the employees and the amount of money owed each under the awards of Board No. 148. The reservations of the parties in paragraph 8 of the stipulation will, of course, be appropriately explored at that time.

### III.

■ Plaintiffs' contention that the awards are unenforceable because they require the payment of penalties without regard to actual loss was based upon primarily the District Court opinion in Railroad Trainmen v. Central of Georgia Ry. Co. (M.D.Ga.1968), 58 CCH Lab. Cas. ¶ 12951. The District Court was reversed by the Fifth Circuit since the original briefs were filed in this case. See 415 F.2d 403.

The railroad in *Central of Georgia* was able to convince the District Court that "there was, and is, no uniform custom and practice among carriers generally, or with this carrier in particular, to pay a day's pay for every contract violation or for every instance in which it may be said that in some respect an employee was 'malassigned.'" The Court of Appeals found that the railroad's effort to prove at trial that the "penalty pay of the sort granted here is unprecedented" could not be successful in light of the undisputed fact that the National Railroad Adjustment Board established by Section 153 First "in the past has frequently awarded pay undiminished by the employee's mitigating earnings."

Counsel for plaintiffs have reiterated KCS's position since the Fifth Circuit's decision in *Central of Georgia* and stated in its letter of August 20, 1969 that "a trial with respect to the disputed issue of custom or practice [is] necessary."

We therefore indicate our present agreement with the Fifth Circuit's opinion in Central of Georgia and shall afford counsel for both parties the opportunity to either enter into further stipulations in regard to all disputed questions of fact or to adduce whatever evidence either may deem appropriate at the evidentiary hearing which will be scheduled under our order.

### IV.

We have not yet discussed in any detail the troublesome problems of jurisdiction and scope of review that are presented. We are satisfied that the rationale of International Ass'n of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), and Air Line Pilots Association, International v. Northwest Airlines, Inc. (8th Cir.1969), 415 F.2d 493, decided September 9, 1969, establishes that we have jurisdiction, at the very least, under Sections 1331 and 1337, Title 28, United States Code.

We have not reached any final conclusion in regard to whether plaintiffs may invoke Section 153 First, (p) and (q), to *review* Board No. 148's awards or whether defendants, by way of counterclaim, may invoke Section 153 First (p) to *enforce* Board No. 148's award. The right to be allowed a reasonable attorneys' fee, to be taxed and collected as costs, is the principal factor controlled by our decision of the jurisdictional question because the Eighth Circuit's recent opinion in *Northwest Airlines* makes clear that attorneys' fees may not otherwise be allowable even if defendants prevail on the counterclaim. We recognize that defendants contend otherwise, but we are certain that if we have jurisdiction under Section 153 First (p), there can be no doubt about defendants' right to attorneys' fees.

We are not presently bothered about the scope of review question because the standards articulated in paragraphs (p) and (q) of Section 153 First are stated in identical language and because those standards were intended by Congress to be but a codification of "those grounds commonly provided for review of arbitration awards." See Senate Report No. 1201, 2 U.S. Code Congressional and Ad-

ministrative News, p. 2287, 1966. Indeed, a similar limited scope of review is provided in substance in Section 159 Third. And see Mr. Justice Frankfurter's dissenting opinion in Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711 at 760, 65 S.Ct. 1282 at 1307, 89 L.Ed. 1886 (1945), in which he pointed out that "the provisions for enforcement and review of the Adjustment Board's awards were based on those for reparation orders by the Interstate Commerce Commission."

We recognize, of course, as did Judge Wisdom in *Central of Georgia*, that "'finality' is a mirage if relied upon to preclude *any* judicial review of an arbitration award or administrative agency's decision." But that is not to say that our ultimate findings and conclusions in this case may not be fairly stated and made in language which will satisfy the statutory language contained in the Railway Labor Act and also conform to the standards articulated as a matter of federal common law applicable to arbitration. See Greater Kansas City Laborers Dist. Coun. v. Builders' Ass'n., of Kansas City (W.D.Mo.1963) 213 F.Supp. 429, affirmed (8th Cir. 1964) 326 F.2d 867, cert. denied 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964), in which we discussed the federal common law generally applicable to labor arbitration.

We are familiar with Judge Meredith's decision in Transportation Communication Emp. U. v. St. Louis-San Francisco R. Co. (E.D.Mo.1968), 296 F. Supp. 507, in which he determined that Section 153 Second's phrase, "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board," makes both paragraph (p) and paragraph (q) of Section 153 First applicable to an award of a board created by agreement of the parties under Section 153 Second, after its 1966 amendment.

On the other hand, we are confronted with Brotherhood of Ry., Airline & Steamship Clerks, etc. v. Special Bd. of Adj. No. 605 (N.D.Ill.1968), 268 F.Supp.

397, affirmed (7th Cir. 1969) 410 F.2d 520. The factual situation presented in this case is apparently the same as that presented in *Special Board of Adjustment No. 605*, in that the voluntary board in both cases was created before Section 153 Second's 1966 amendment. The submissions in both cases, however, were apparently made after the effective date of the 1966 amendments. We would be surprised if the parties in this case were not cognizant of the 1966 amendments when the submissions were made in this case, although that is a matter counsel may advise the Court about at the evidentiary hearing.

Defendants, however, contend that the 1966 amendment to Section 153 Second, as it appears in the second paragraph of that section, provides for the creation of some sort of a separate and additional arbitration board, quite different in kind from a board created pursuant to the first paragraph of Section 153 Second; that boards created since the 1966 amendment have become known as "P. L. Boards;" and that the last two sentences of Section 153 Second which provide for finality of awards and which incorporate "the same provisions that apply to proceedings for enforcement" of Section 153 First awards do not apply to a board which may have been created pursuant to the first paragraph of Section 153 Second. In short, defendants argue that because Board No. 148 was created before the 1966 amendment added another paragraph of Section 153 Second, only the first paragraph of that section is applicable to that board and that, more specifically, none of the second paragraph of Section 153 Second is to be applied to Board No. 148. We are not in present agreement with those contentions for reasons we now state.

### V.

United Steelworkers of America v. Warrior & Gulf Nav. Co., *supra*, 363 U. S. at 578, 80 S.Ct. at 1351, stated that "since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial

agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here." One can not read the multitude of Railroad Labor Act cases in which finality of arbitration awards has been vigorously resisted and the history of the amendments to the Railroad Labor Act over the past almost half century, all of which have consistently extended the procedures under which limited compulsory arbitration has been made mandatory, without being forced to recognize that at least on some occasions both the railroads and the railroad unions have evinced great hostility to being finally bound by arbitration awards rendered in regard to their labor disputes. And certainly the parties to railroad labor disputes were not discouraged from attempting to move arbitration board awards immediately into the courts by many of the cases decided by lower federal courts before the Supreme Court's 1965 decision in *Gunther.*

The 1966 amendment of Section 153 Second obviously borrowed from the experience gained under the airline system boards of adjustment which were created in accordance with the requirements of Section 204 of the Railway Labor Act. That section imposed a mandatory duty upon the parties to airline disputes to establish adjustment boards to settle grievances which arose out of their collective bargaining agreements.

Congress refused to give the airlines the same option it gave the railroads in the 1920 Act either to create or not to create a board which would possess power to render a final and binding award over which courts could exercise but an exceedingly narrow jurisdiction. The 1926 Act placed a duty upon the railroads to create boards of adjustment by agreement but, as noted in International Ass'n of Machinists v. Central Airlines, *supra,* 372 U.S. at 688, 83 S.Ct. at 960, "creation of adjustment boards did not automatically follow." It was not until the 1934 Act, passed in light of the parties' reluctance to comply with the explicit direction of the 1926 Act, that railroads and their employees were mandatorily required to submit their labor disputes to and to be finally bound by the awards of the National Railroad Adjustment Board.

The 1934 amendment, of course, left what is now the first paragraph of Section 153 Second available for the creation of voluntary boards such as Board No. 148. But the 1966 backlog in the First and Third divisions of the National Railroad Adjustment Board evinces the fact that, generally speaking, the parties to railroad disputes apparently were content with an obvious breakdown in the limited compulsory arbitration procedures provided by Section 153 First and that it did not occur to them to solve that problem by creation of voluntary boards under Section 153 Second as it existed before the 1966 amendment. See Senate Report No. 1201, 1966 U.S. Code Congressional and Administrative News, 89 Cong.2d Sess. Vol. 2, p. 2285.

International Ass'n of Machinists v. Central Airlines, *supra,* however, read into Section 204 not only the mandatory duty to create a board which included the basic essential of all effective arbitration agreements, namely, the designation of a neutral member whose vote, as a practical matter, would insure and control the decision of the board, but it also read into that section the additional requirement that the "provisions of a § 204 contract, such as those governing the composition of the adjustment board, the procedures to be employed as to notice and hearing or for breaking deadlocks, or the finality to be accorded board awards, *are to be judged against the Act and its purposes and enforced or invalidated in a fashion consistent with the statutory scheme"* (372 U.S. at 694, 83 S.Ct. at 963) [emphasis ours].

Mr. Justice White added that "there may be, for example, any number of provisions with regard to the finality of an award that would satisfy the requirements of § 204 but we are quite sure that *some* such provision is requisite to a § 204 contract * * *." (372 U.S.

at 694, 83 S.Ct. at 963) [emphasis the Court's].

The agreement of May 23, 1956, which created Board No. 148 was obviously consistent with the statutory scheme and federal labor policy favoring settlement of disputes by final and binding arbitration. The composition of Board No. 148 commendably anticipated the method of selecting a neutral member which was later required as a matter of law under Section 153 Second as amended in 1966. The procedures adopted for Board No. 148 apparently followed those applicable to the National Board of Adjustment. And provision was made in the May 23, 1956 agreement for finality to be accorded the awards of Board No. 148. Indeed, it is difficult to see much, if any, substantial difference between Public Board No. 34 involved in the *Frisco* case reported in 296 F.Supp. 507, which was created after and expressly pursuant to Section 153 Second as amended in 1966, and Board No. 148 which was created before the 1966 amendment. We are of the present judgment that the only real difference between the two boards is the time and the manner of their creation. We are of the present view that defendants' contention that the 1966 amendment to Section 153 Second applies only to boards created after the effective date of that amendment is not tenable.

We are also presently of the view that federal labor law policy considerations require application of Section 153 Second· to all boards which were established by agreements that were and are consistent with controlling federal law principles applicable to arbitration whether such a board was created before or after the 1966 amendment to Section 153 Second. Brotherhood of Rail. Train. v. Denver & R. G. W. R. Co. (10th Cir. 1967), 370 F.2d 833 at 835, established that the 1966 amendments were to be applied to a pending case. We know of no reason why that principle should not be applicable to this case.

What we have said indicates the choice we presently believe should be made between the *Frisco* case decided by the Eastern District of Missouri and the Seventh Circuit's decision in *Special Board of Adjustment No. 605.* We are presently inclined toward the view of the Eastern District of Missouri. We have present difficulty with the Seventh Circuit's treatment of Machinists v. Central Airlines, *supra,* particularly when that case is considered in light of Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), a case not discussed by either of the *Special Board of Adjustment No. 605* decisions. If a Section 301 arbitration agreement is within the Section 1337, Title 28, United States Code, jurisdiction of a District Court for removal purposes, as was held in *Avco Corp.,* we have difficulty in concluding that enforcement of an award rendered pursuant to a voluntary Section 153 Second arbitration agreement is not likewise within the jurisdiction of that section. We reserve final judgment on that question until we have the benefit of counsels' oral argument.

## VI.

For the reasons stated, it is therefore

Ordered that both of the pending motions for full and partial summary judgment should be and are hereby denied. It is further

Ordered that this case be set for evidentiary hearing at the United States Court House, Kansas City, Missouri, Division One Court Room, on November 20, 1969, at 9 :30 a. m. It is further

Ordered that both parties be prepared to offer all evidence each desires to offer in connection with any disputed question of fact reserved by the stipulation or otherwise. It is further

Ordered that defendants prepare, and, before the evidentiary hearing, submit to counsel for plaintiffs for approval as to form, an appropriate exhibit on which the names of the claimants and the amounts of money to which each is entitled under each award of Board No. 148 shall be set forth. It is further

# 1150

Ordered that defendants be prepared to make appropriate proof of the reasonableness of its attorneys' fees unless agreement on the question of reasonableness is reached with plaintiffs' counsel. Agreement on the reasonableness of attorneys' fees shall not constitute a waiver of or in any way prejudice either party's contention that fees should or should not be allowed under the circumstances. It is further

Ordered that what we said herein is not to be considered as the Court's final determination of any of the factual or legal questions presented. We have indicated our present view in accordance with the request of both parties that we rule the pending motions for full and partial summary judgments on the record as it is now constituted. Our directions in this order are intended to make certain that both parties are afforded full and fair opportunity to adduce any and all evidence they may wish to offer. It is further

Ordered that this Court will arrange a conference with counsel before November 20, 1969 should counsel believe such a conference would simplify or expedite the evidentiary hearing.

