**EMPLOYEES PROTECTIVE ASSOCI-
ATION et al., Plaintiffs,**

v.

**NORFOLK AND WESTERN RAILWAY
COMPANY BROTHERHOOD OF LO-
COMOTIVE ENGINEERS and Special
Board of Adjustment No. 813, Defend-
ants.**

Civ. A. No. 74–10.

United States District Court,
W. D. Virginia,
Roanoke Division.

April 4, 1974.

William G. Anderson, Roanoke, Va.,
for plaintiffs.

William B. Poff, Woods, Rogers,
Muse, Walker & Thornton, Roanoke, Va.,
for defendant Norfolk and Western.

OPINION AND ORDER

TURK, Chief Judge.

Plaintiffs are locomotive engineers
employed by the Norfolk and Western
Railway Company (N & W), who have
formed an unincorporated association
known as the Employees Protective As-
sociation which is here challenging the

opinion and award of the Special Board of Adjustment No. 813. The case is now before the court on the motion of the defendant, Norfolk and Western Railway Company, to dismiss the plaintiff's amended complaint for lack of subject matter jurisdiction.

The history of this dispute insofar as it is relevant to the question of jurisdiction is as follows. The plaintiffs in this case are subject to an agreement entered into on June 18, 1959 incident to the merger of the N & W and the Virginia Railway Company. Section 1(a) of this protective agreement provides:

"(a) On the effective date of the said merger, the Norfolk and Western will take into its employment all employees of the Virginian who are willing to accept such employment, and none of the present employees of either of said carriers shall be deprived of employment or placed in a worse position with respect to compensation at any time during his employment because of the merger of said railroads or any program of economies undertaken by the Norfolk & Western because of the merger including, but not specifically limited to, . . . changes pursuant to any integration of employment forces, or other such economies or changes resulting from the merger; provided, however, that all presently working employees of the Virginian and the Norfolk & Western shall be entitled to the foregoing preservation of employment and, provided further, that in the event that the employee organizations at their option elect not to have presently working employees of either railroad occupy available positions on the merged railroad through integration of seniority rosters without liability to furloughed employees who may be affected by such integration of seniority rosters, then, in that event, said employees shall be entitled only to compensatory benefits and other protection afforded by the terms of the Washington Job Protection Agreement in lieu of preservation of their employment."

Also relevant is a second protective agreement entered into by the N & W and representatives of the plaintiffs on January 10, 1962, in connection with the merger of the N & W and so-called Nickel Plate Railroad. Section 1(b) of this agreement provided in part:

"In consideration of the foregoing employee benefits, Norfolk and Western and the other carriers heretofore named shall be entitled to transfer the work of the employees protected hereunder throughout the merged or consolidated system and the labor organizations will enter into implementing agreements providing for the transfer of employees to follow their work, and the employees, their organizations and the carriers will cooperate to that end."

Section 1(d) of this agreement provided in part:

"In the event any dispute or controversy arises between Norfolk & Western and any labor organization signatory to this Agreement with respect to the interpretation or application of any provision of this Agreement or of the Washington Job Protection Agreement (except as defined in Section 11 thereof) or of any implementing agreement entered into between Norfolk & Western and individual organizations which are parties hereto pertaining to the said merger or related transactions, which cannot be settled by Norfolk & Western and the labor organization or organizations involved within thirty days after the dispute arises, such dispute may be referred by either party to an arbitration committee for consideration and determination. Upon notice in writing served by one party on the other of intent by that party to refer the dispute or controversy to an arbitration committee, each party shall, within ten days, select one member of the arbitration committee and the two members thus chosen shall endeavor to select a third member who shall serve as chairman, in which event the compensation and expenses of the chairman shall be

borne equally by the parties to the proceeding. All other expenses shall be borne by the party incurring them. Should the two members be unable to agree upon the appointment of the third member within ten days, either party may request the National Mediation Board to appoint the third member, whose compensation and expenses shall then be paid in accordance with existing law. The decision of the majority of the arbitration committee shall be final and binding."

The parties also executed a Memorandum of Understanding on January 10, 1962, which provided:

"It is understood and agreed that the said agreement [1962 Nickle Plate Protective Agreement] does not diminish the rights and benefits of the employees subject to the Agreement of June 18, 1959, or implementing agreements made thereto in the Norfolk and Western-Virginian merger case except that said Agreement effective January 10, 1962, shall apply with respect to arbitration, restraining of employees and transfer of work."

The parties (N & W and the Brotherhood of Locomotive Engineers) failed to agree on certain implementing agreements concerning the integration of seniority rosters and transfer of work with the result that on October 17, 1972, N & W served notice for arbitration as provided in section 1(d) of the 1962 agreement. The parties were unable to agree on the third member of the arbitration board, so again pursuant to section 1(d) N & W requested the National Mediation Board to appoint the third member.

Thereafter, Special Board of Adjustment No. 813 was convened, and on April 25, 1973, entered its interim opinion on the threshold issue of whether it had the authority to resolve the merits of the disputes. This opinion concluded, largely on the basis of the 1962 protective agreement quoted above, that the Board had the authority to decide the disputed issues and that N & W had followed the proper procedure in giving notice with respect to the implementing agreements in dispute. However, the Board also held that meaningful negotiation between the parties had not taken place and that the case should be remanded with directions that the parties exert their best efforts in reaching a mutually acceptable agreement. After further negotiations, the parties remained deadlocked on two issues, for which the Board was reconvened to arbitrate. With particular reference to section 1(a) of the 1959 protective agreement, quoted above, the Board concluded that there should be a consolidation of seniority rosters for engineers for road districts east of Roanoke if preservation of their employment was to be maintained. It is this conclusion which the plaintiffs now seek to challenge in this court. Plaintiffs contend that the issue of merger of seniority rosters was settled at the time of the 1959 protective agreement and was never meant to be the subject of arbitration. This issue of arbitrability need not be decided because for the reasons which follow it is the court's conclusion that there is no federal jurisdiction in this case.

■ Plaintiffs first contend that jurisdiction to review their amended complaint is specifically granted by the Railway Labor Act, 45 U.S.C. § 151 et seq. The court is unable to concur in this contention for the reason that the award herein challenged was made by a voluntary, contractual board as opposed to the mandatory boards provided for in the Act. The first jurisdictional provision of the Act, found at 45 U.S.C. § 153 First (q), was enacted in 1966 and provides for judicial review of decisions by the National Railroad Adjustment Board (NRAB).[1] The other jurisdictional pro-

---

1. "If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p)

vision in the Act, found in the second paragraph of 45 U.S.C. § 153 Second and also added in 1966, provides for the review of awards by "special boards of adjustment."[2] These so-called "special boards" were created to decide disputes otherwise referable to the National Railroad Adjustment Board in order to

could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28."

2. "If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be considered by such board shall be defined in the agreement establishing it. Such board shall consist of one person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. Each member of the board shall be compensated by the party he is to represent. The members of the board so designated shall determine all matters not previously agreed upon by the carrier and the representative of the employees with respect to the establishment and jurisdiction of the board. If they are unable to agree such matters shall be determined by a neutral member of the Board selected or appointed and compensated in the same manner as is hereinafter provided with respect to situations where the members of the board are unable to agree upon an award. Such neutral member shall cease to be a member of the board when he has determined such matters. If with respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes. In the event the members of the board designated by the parties are unable, within ten days after their failure to agree upon an award, to agree upon the selection of such neutral person, either member of the board may request the Mediation Board to appoint such neutral person and upon receipt of such request the Mediation Board shall promptly make such appointment. The neutral person so selected or appointed shall be compensated and reimbursed for expenses by the Mediation Board. Any two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named. Compliance with such awards shall be enforcible by proceedings in the United States District Courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

Although this statute refers to these boards as "special boards of adjustment", the National Mediation Board designates them as Public Law Boards. See 29 C.F.R. § 1207.4.

reduce the backlog of cases pending before that agency. 1966 U.S.Code Cong. & Admin.News, pp. 2285–2286.

In the case at bar, the award which plaintiffs seek to impeach was not the product of a division of the NRAB or a special board established pursuant to the requirements of § 153 Second. Rather, this award resulted from the creation of a special board provided for in section 1(d) of the January 10, 1962, protective agreement, supra. Thus the award flowed from a private contract rather than a statutory mandate, and as such the jurisdictional provisions of § 153 First (q) and § 153 Second by their own terms are not applicable. This conclusion is squarely supported by Brotherhood of Railway, Airline & Steamship Clerks v. Special Board of Adjustment No. 605, 410 F.2d 520 (7th Cir.) cert. denied, 396 U.S. 887, 90 S.Ct. 177, 24 L. Ed.2d 162 (1969) and Tribbett v. Chicago Union Station Company, 352 F.Supp. 8 (N.D.Ill.1972). On the other hand, Kansas City Southern Ry. Co. v. Brotherhood of Railroad Trainmen, 305 F. Supp. 1142 (W.D.Mo.1969) indicates that a voluntary arbitration agreement is probably within the jurisdictional provisions of § 153 Second. The court recognizes that there is a certain inconsistency in denying jurisdiction to review the award made by this voluntary board when an award by an identical board mandatorily created under the statute could be reviewed, and further recognizes that federal labor policy may well argue in favor of jurisdiction.[3] The court nevertheless feels constrained by the terms of the Railway Labor Act, which in this case do not provide for federal court review of voluntary arbitration decisions.

█ Plaintiffs also rely on Title 28 U.S.C. § 1337 as a basis of jurisdiction:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . . ."

Plaintiffs contend that this action may be said to arise under the Interstate Commerce Act, 49 U.S.C. § 5, in that the I.C.C. approved the 1959 Merger Protection Agreement and a memorandum agreement adopted as an incident to the merger of N & W and the Virginian Railway Company in 1959. Plaintiffs cite no authority for this basis of jurisdiction, and the collateral relationship of the Interstate Commerce Act to the private agreement involved in this case does not appear to satisfy the requirement that the case "arise under" that Act. See Gully v. First National Bank of Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Schatte v. International Alliance of Theatrical Stage Employees, 70 F.Supp. 1008 (S.D.Cal.1947), aff'd 165 F.2d 216 (9th Cir.), cert. denied, 334 U.S. 812, 68 S.Ct. 1018, 92 L. Ed. 1743 (1948).

█ Of greater merit with respect to 28 U.S.C. § 1337 as a basis of jurisdiction is the argument that although this case does not come within the provisions of the Railway Labor Act, discussed above, it may nevertheless be said to "arise under" that statute and thus come within 28 U.S.C. § 1337. This argument was discussed and apparently accepted by the district court for the Western District of Missouri in Kansas City Southern Railway Co. supra., but rejected by the Seventh Circuit in Special Board of Adjustment No. 605, supra. As with the other jurisdictional arguments, this court is of the opinion that the decision by the Seventh Circuit should be followed in the present case. Of relevance to this argument is the case of International Association of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) in which it was held that jurisdiction existed under 28 U.S.C. § 1337 to review an arbitration award rendered by a board of adjustment created pursuant to a contract between the airline and the union. But as the Supreme Court was careful to point out, under § 204 of the

---

3. This point is ably discussed in Kansas City Southern Ry. Co. v. Brotherhood of Railroad Trainmen, 305 F.Supp. 1142 (W.D.Mo.1969).

Railway Labor Act, 45 U.S.C. § 184, the airlines and their employees were *required* to establish boards of adjustment to resolve all grievances. In contrast, no such mandatory requirement existed in the case at bar, and the board in question was the product of a purely voluntary agreement. Accordingly, this court is of the opinion that jurisdiction is not available pursuant to 28 U.S.C. § 1337.

■ Plaintiffs also assert that jurisdiction is available under 28 U.S.C. § 1331 [4] in that a substantial federal question exists as to whether federal laws have operated to deprive them of property rights without due process of law. As noted with respect to 28 U.S.C. § 1337, the court does not perceive this case as "arising under" the Railway Labor Act or the Interstate Commerce Act. Nor does this court consider the federal involvement in the award here challenged to have been sufficient to raise a constitutional claim. It is true that the National Mediation Board was utilized to provide the third member of the arbitration board, but the resulting decision and award was nevertheless the product of a privately agreed upon process for resolving disputes with only tangential federal involvement. Federal district courts are courts of limited jurisdiction dependent upon statutes enacted pursuant to Article III, § 1 of the Constitution, see Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943); Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964), cert. denied 379 U. S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702 (1965), and it is clear that lack of federal jurisdiction cannot be overcome by agreement of the parties. Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934).

As noted, the court perceives this case as involving an attempt to impeach an award resulting from a privately agreed upon process of resolving disputes. As such, it is the court's opinion that it has no jurisdiction to review the award. Accordingly, for the reasons stated, the defendant's motion to dismiss the plaintiffs' amended complaint for lack of jurisdiction is hereby granted.

---

4. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States."