296 F.Supp. 507 (1968)
TRANSPORTATION-COMMUNICATION EMPLOYEES UNION, and Transportation-Communication Employees Union, Frisco System Division 32, Plaintiffs,
v.
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Defendant.
No. 68 C 60(2).
United States District Court E. D. Missouri, E. D.
August 8, 1968.
Haley, Bardgett & Williamson, St. Louis, Mo., Milton Kramer, Washington, D. C., for plaintiffs.
Paul R. Moody, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
The Transportation-Communication Employees Union and the Transportation-Communication Employees Union, Frisco System Division 32, filed suit under 28 U.S.C. § 1337 against the St. Louis-San Francisco Railway Company seeking an injunction prohibiting the abolishment of certain employee job positions or in the alternative prohibiting the operation of certain computer equipment. St. Louis-San Francisco Railway Company (Frisco) filed a permissive counterclaim against the Transportation-Communication Employees Union and the Transportation-Communication Employees Union, Frisco System Division 32 (Union), under the provisions of 45 U.S.C. § 153, First, (q), seeking review of certain awards rendered by Public Law Board No. 34. With consent of the parties, the Union's complaint was dismissed without prejudice by Court order entered February 23, 1968. The dismissal did not affect the counterclaim filed by Frisco.
*508 Pursuant to 45 U.S.C. § 153, Second, Frisco and the Union entered into an agreement on May 16, 1967, establishing Public Law Board No. 34 to hear and decide seventy-four matters then in dispute between them. Public Law Board No. 34 (Board) proceeded to hear and render awards on the disputed matters submitted to it. Among the awards which it rendered were awards Nos. 18, 23, 24, 54, 55, 56, 57, 58, 59, 60, 61, and 72. Frisco alleges that the Board failed to comply with the provisions of the Railway Labor Act, 45 U.S.C. § 151, et seq., in issuing the above twelve awards because it failed to confine itself to matters within the scope of its jurisdiction in the following respects:
(1) The Board failed to confine itself to the issues submitted to it for decision;
(2) The holding of the Board that the term "radio" was included within the scope rule of the labor agreement in issue constituted an unlawful change in the terms of a labor agreement which the Board had no jurisdiction to accomplish, changes in labor agreements in the railway industry being confined solely to the method and manner prescribed by the Railway Labor Act, 45 U.S.C.A. § 151, et seq.;
(3) The function of the Board delegated to it, i. e., interpretation and application of labor agreements, was exceeded when the Board rewrote the labor agreement to include jobs, functions and media within the scope rule not included by labor and management nor even contemplated by them when the scope rule was written;
(4) The Board completely ignored the provisions of law for the purpose of changing a labor agreement, i. e., 45 U.S.C.A. § 156, and substituted a law-making and agreement-writing function for the orderly processes enacted by Congress;
(5) The Board failed and refused to follow the dictates of statutes and governing court decisions in rendering said awards.
Frisco requested the Court to review the twelve awards and set them aside. The Union counterclaimed requesting the Court to enforce the awards under the provisions of 45 U.S.C. § 153, First, (p), and to award attorney fees to the Union.
The Union made a motion for judgment on the pleading, which it later requested to be treated as a motion for summary judgment. Frisco also made a motion for summary judgment.
Public Law Board No. 34 was created by agreement of the parties under the provisions of 45 U.S.C. § 153, Second. That section of the Railway Labor Act provides that the awards of the boards created thereunder "shall be final and binding upon both parties to the dispute". The statute provides that "[c]ompliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." The provisions of the Railway Labor Act relating to review by the United States district courts of orders and awards of the Adjustment Board (National Railroad Adjustment Board) are found in 45 U.S.C. § 153, First, (p) and (q). The district courts are given jurisdiction to enforce the orders of the Adjustment Board and are granted a very limited jurisdiction to set aside such orders.
Research has failed to reveal a case in which an award of a board created under the provisions of 45 U.S.C. § 153, Second, has been enforced or reviewed by the courts. The extent of this Court's jurisdiction under the statute to review the decisions of such boards must be determined. Title 45, U.S.C. § 153, Second, on its face, seems to limit the jurisdiction of the United States district courts to enforcement of the awards of the boards. That section of the statute refers only to enforcement, it does not talk of the setting aside of an award as does 45 U.S.C. § 153, First, (p) and (q). If the United States district courts have jurisdiction to do anything other than *509 enforce such orders, it must arise by incorporation of all the provisions of 45 U.S.C. § 153, First, (p) and (q), into 45 U.S.C. § 153, Second, by the phrase "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."
The Railway Labor Act, 45 U.S.C. § 151, et seq., was amended in 1966. Among the provisions amended are those under consideration, 45 U.S.C. § 153, First, (p) and (q), and 45 U.S.C. § 153, Second. The legislative history of the 1966 amendments indicates conclusively that Congress intended for the United States district courts to have jurisdiction to review the awards of the boards created by agreement of the parties under 45 U.S.C. § 153, Second, to the same extent that the district courts were granted jurisdiction to review orders of the Adjustment Board under 45 U.S.C. § 153, First, (p) and (q). See S.Rep.No.1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S. Cong. & Admin.News (1966), p. 2285 at 2289. See also Dominquez v. National Airlines, Inc., 279 F.Supp. 392 (S.D.N.Y. 1968) (dictum).
The review by this Court of the awards issued by Public Law Board No. 34 is severely limited by statutory provisions and judicial precedent. The statute, 45 U.S.C. § 153, First, (p) and (q), provides that an award of the Adjustment Board (and, therefore, of the boards created under 45 U.S.C. § 153, Second) may be set aside only for: failure to comply with the provisions of title 45, U.S.C.; failure of the order to conform, or confine itself, to matters within the scope of the boards' jurisdiction; or for fraud or corruption by a member of the division making the order. The Supreme Court of the United States has held that district courts may only set aside an order if the board's decision is "wholly baseless and completely without reason." Gunther v. San Diego & A. E. Ry., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). The legislative history of the 1966 amendments to the Railway Labor Act shows that Congress intended that the courts were to continue to have the power to set aside orders of the boards which were "actually and indisputedly without foundation in reason or fact." S.Rep.No.1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S.Cong. & Admin.News (1966), p. 2285 at 2287.
One category of disputes submitted to the Board concerned twelve separate incidents in which Frisco assigned the transmission of radio communication to certain employees. The Union alleged that the Scope Rule of the collective bargaining agreement between Frisco and the Union had been violated by failure to assign such work to employees represented by it. The Union requested compensation for the employees to whom it alleged the work should have been assigned. The twelve awards under review by this Court were submitted to the Board by Frisco and by the Union for the Board's determination of whether the Scope Rule of the collective bargaining agreement included communications by "radio".
The Union contended that "radio" was included in the Scope Rule of the Telegraphers' Agreement. Frisco contended that "radio" was not included in the Scope Rule. The Board determined that the Scope Rule of the collective bargaining agreement between the parties did include "radio" communications.
The complaint of Frisco before this Court is that the Board exceeded its jurisdiction and rewrote the agreement between the parties when it determined that the Scope Rule included "radio". Frisco contends that the Union has accomplished a change in the collective bargaining agreement under the guise of processing a grievance. The Union and Frisco by agreement set up Local Board No. 34 to hear and decide certain disputes which were in existence between them. Twelve of these disputes involved the interpretation of the Scope Rule, and whether that rule included certain communications by radio. Frisco stated in its statement to Public Law Board No. 34 in case No. 18 (award No. 18) that "[t]his is a Scope Rule dispute." The *510 present position of Frisco is apparently that the Board had jurisdiction to determine that the Scope Rule did not cover the acts in question, but that the Board did not have jurisdiction to determine that the act in question was covered by the Scope Rule.
The essence of what Frisco is requesting of this Court is an interpretation of the provisions of the bargaining agreement between the parties. Frisco is requesting an interpretation that the Board exceeded its jurisdiction in that it wrongly interpreted the Scope Rule. The Court is, thus, requested to rule that the Board's interpretation of the Scope Rule was incorrect. This would not be a ruling on the jurisdiction of the Board, but a review of the merits of the Board's decision. Congress and the Supreme Court have made it very clear that the courts are not to substitute their opinion for that of the Board's. The courts may set aside a decision of a board only if it is "wholly baseless and completely without reason." The decision must be "actually and indisputedly without foundation in reason or fact." A review of the decision of the Board in award No. 18 shows that it does not meet this test. The basis of the Board's decision in award No. 18 also serves as the foundation for the decisions in awards Nos. 23, 24, 54, 55, 56, 57, 58, 59, 60, 61, and 72.
Frisco cites several cases which discuss the difference between "major" disputes and "minor" disputes under the Railway Labor Act. The importance of this distinction is that the major disputes are not subject to the jurisdiction of the Adjustment Board created by 45 U.S.C. § 153, First, and, hence, not proper subject matter for boards created under 45 U.S.C. § 153, Second. The basic distinction between "major" disputes and "minor" disputes was drawn by the United States Supreme Court in Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The Court said in that case:
"[A `major' dispute] relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
"[A `minor' dispute], however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case."
The difference beween the interpretation of an existing agreement, and a change in the original intended basis of an agreement, as pointed out by the Eighth Circuit Court of Appeals in Missouri-Illinois R. R. v. Order of Railway Conductors and Brakemen, 322 F.2d 793 (1963), is often a question of degree. The degree in this particular situation has already been decided by the United States Supreme Court. The essence of the dispute in this case is over work assignment. It is a dispute as to whether a certain employee must be utilized to perform a certain job with the use of radio. The Supreme Court, in Transportation-Communication Emp. Union v. Union Pacific R. R., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), had before it a dispute over the assignment of certain jobs in connection with IBM machines. The railroad had assigned the jobs to members of the Clerks Union. The Telegraphers Union (the same Union as involved in this action) had sought compensation from the railroad for its members who had been idle because of the assignment to the clerks. The dispute between the railroad and the union was heard by the Adjustment Board under the provisions of 45 U.S.C. § 153, First. The Supreme Court in review of the matter stated that the Adjustment Board had jurisdiction to hear and decide *511 controversies over the interpretation of the bargaining agreement between the railroad and the union as it relates to work assignment.
This decision by the Supreme Court must, of necessity, have included a determination that a dispute as to work assignments is a minor dispute. This Court is of the opinion that the attack of Frisco upon the jurisdiction of the Board because of the "major" versus "minor" distinction is disposed of by the Supreme Court's holding in Transportation-Communication Emp. Union v. Union Pacific R. R., supra.
That case, however, raises a question which although not brought forward by either party to this suit must be answered by the Court. The Supreme Court noted that it is often assumed that a dispute over work assignments is a dispute between an employer and only one union, and, therefore, must be decided on the language of a single collective bargaining agreement considered in isolation from all other agreements. The Court rejected such reasoning, holding that "[i]n order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements * * *." The Board, said the Supreme Court, heard and decided the case without considering the railroad's liability to the clerks under its contract with them. The Court held that the Clerks Union was an indispensible party and directed that the cause be remanded to the Adjustment Board. The Adjustment Board was required to give the Clerks Union an opportunity to be heard and to resolve the entire dispute upon consideration of all the contracts the railroad had with any union "involved" in the overall dispute.
The awards of Public Law Board No. 34 did not consider the possibility that another union might have an interest in the determination that communication by radio in a particular instance comes within the Scope Rule of the labor contract between Frisco and the Transportation-Communication Employees Union. Awards 18, 23, 24, 55, 56, 57, 58, and 72 state that a "Telegrapher" handled the particular communication in question. A "Telegrapher" is presumedly a member of the Transportation-Communication Employees Union, which is a party to this action. Awards 60 and 61 state that the communication in question was handled by a "Clerk". Award 59 states that the communication was handled by a "Yardmaster". Award 54 states that the communication was handled by a "member of train crew". The Court is unable to determine from the record the union membership of the individuals who handled the communications in awards 54, 59, 60, and 61.
This Court is of the opinion that the Board cannot make a proper determination of the matter unless it also reviews the contracts with Frisco of the other unions who may have an interest in this matter. See Brotherhood of Railroad Signalmen v. Southern Ry., 380 F.2d 59 (4th Cir. 1967), cert. denied 389 U.S. 958, 88 S.Ct. 324, 19 L.Ed.2d 368 (1967). See also Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry., 229 F.2d 59 (8th Cir. 1956), cert. denied 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861 (1956).
These awards will be remanded to the Board for a determination of the other unions who may have an interest. After this determination has been made and the other unions have been given an opportunity to be heard, the Board shall then review the other union contracts for the purpose of making an interpretation of the scope of all the contracts and what effect they may have on these awards, if any.
Attorneys' fees will be denied.