The **BALTIMORE AND ANNAPOLIS RAILROAD COMPANY, a/b/c**

v.

**NATIONAL MEDIATION BOARD and United Transportation Union.**

**Civ. A. No. 21477.**

United States District Court, D. Maryland.

Dec. 1, 1970.

Joseph I. Huesman and Lerch & Huesman, Baltimore, Md., for plaintiff.

Stephen H. Sachs, U. S. Atty. (former), George Beall, U. S. Atty., Francis S. Brocato, Asst. U. S. Atty., William D. Ruckelshaus, Asst. Atty. Gen., and Harland F. Leathers and David Epstein, Attys., Dept. of Justice, for defendant, National Mediation Board.

Norris W. Tingle, Baltimore, Md., for defendant, United Transportation Union.

NORTHROP, Chief Judge.

This action was instituted by the Baltimore and Annapolis Railroad Company to obtain a review of the action of the National Mediation Board in establishing Public Law Board No. 406 and to obtain review of the procedural award entered by that Board.

The facts are not in dispute. Jurisdiction is predicated upon 28 U.S.C. § 1337 and 45 U.S.C. § 151 et seq. Plaintiff is a carrier by railroad and motor bus subject to the Interstate Commerce Act and the Railway Labor Act, 45 U.S.C. § 151 et seq. Defendant is an agency of the United States created by the Railway Labor Act, 45 U.S.C. §§ 151, 153, and 155.

Plaintiff's operating employees are represented by the United Transportation Union, which entered into a labor agreement with plaintiff on October 1, 1967. On April 15, 1969, the Union wrote plaintiff requesting that it enter into a written agreement establishing a Special Board of Adjustment in accordance with 45 U.S.C. § 153, Second, to hear and render awards relative to wage claims made by three of plaintiff's chauffeurs. Plaintiff refused to comply with this request, stating that the procedure for handling such disputes was controlled by the collective bargaining agreement which did not provide for the estab-

lishment of Special Boards of Adjustment.

On May 28, 1969, the Union requested the National Mediation Board to appoint a procedural neutral member to determine the issue of the establishment and jurisdiction of the Public Law Board. On July 1, 1969, the National Mediation Board issued an order convening Public Law Board No. 406 for the purpose of determining the jurisdictional issue raised by plaintiff. On July 10, 1969, the procedural neutral was appointed. Public Law Board No. 406 rendered an award on August 11, 1969, establishing its jurisdiction over the wage claims in dispute.

On August 26, 1969, the Union requested the appointment of a merits neutral for the purpose of making awards in the wage disputes, and, on November 19, 1969, the National Mediation Board appointed a "third and Merits Neutral Member of Public Law Board No. 406."

On December 2, 1969, plaintiff filed in this court its petition to review the action of the defendant National Mediation Board. Plaintiff asks this court to declare that the National Mediation Board is without jurisdiction to establish Public Law Board No. 406 and thus to declare that defendant's orders are of no force and effect; and to declare that

the award of Public Law Board No. 406 is also of no force and effect. It is plaintiff's contention that Article 4, section 3 of the Collective Bargaining Agreement establishes the exclusive remedy for resolving disputes between plaintiff and its employees.

On April 2, 1970, defendant filed a motion to dismiss and/or in the alternative for summary judgment, alleging that: (1) the court lacks jurisdiction over the subject matter; (2) the court lacks jurisdiction over the defendant; (3) there are no disputed issues of fact and defendant is entitled to judgment as a matter of law since the matters complained of are not judicially reviewable and are committed to agency discretion.[1]

The initial question for determination is the power of this court to review the jurisdictional award of Public Law Board No. 406. 45 U.S.C. § 153, Second, provides that awards of special boards of adjustment "shall be final and binding upon both parties to the dispute." It further provides that "[c]ompliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."[2]

---

1. On October 9, 1970, the United Transportation Union filed a motion asking leave to intervene as a defendant. This court, in an order dated October 21, 1970, granted the Union leave to intervene.

2. The Railway Labor Act, 45 U.S.C. § 153, Second, provides:

Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement,

it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.

If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be con-

Review by the federal courts of the awards and orders of the Adjustment Board is controlled by 45 U.S.C. § 153, First (p) and (q). This section grants jurisdiction in the United States district courts to enforce orders of the Adjustment Board and limited jurisdiction to set aside such orders. Since on its face section 153, Second, seems to preclude review of orders of special adjustment boards except in proceedings to enforce awards, any other jurisdiction must exist by virtue of the provisions of section 153, Second, by way of the phrase "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." Transportation-Communication Emp. Union v. St. Louis-San Francisco R. Co., 296 F.Supp. 507 (E.D.Mo.1968). *See also* Pyzynski v. New York Central Railroad Co., 421 F.2d 854 (2d Cir. 1970).

In Brotherhood of Locomotive Eng. v. Denver & R.G.W.R. Co., 411 F.2d 1115 (10th Cir. 1969, aff'g 290 F.Supp. 612 (D.Colo.1968), the court discussed at length the construction of the 1966 amendment of section 153 of the Railway Labor Act. The case arose out of a dispute between two unions as to which of the two was the proper bargaining agent of a certain employee. The Brotherhood of Locomotive Firemen & Enginemen submitted several grievance

sidered by such board shall be defined in the agreement establishing it. Such board shall consist of one person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. Each member of the board shall be compensated by the party he is to represent. The members of the board so designated shall determine all matters not previously agreed upon by the carrier and the representative of the employees with respect to the establishment and jurisdiction of the board. If they are unable to agree such matters shall be determined by a neutral member of the board selected or appointed and compensated in the same manner as is hereinafter provided with respect to situations where the members of the board are unable to agree upon an award. Such neutral member shall cease to be a member of the board when he has determined such matters. If with respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes. In the event the members of the board designated by the parties are unable, within ten days after their failure to agree upon an award, to agree upon the selection of such neutral person, either member of the board may request the Mediation Board to appoint such neutral person and upon receipt of such request the Mediation Board shall promptly make such appointment. The neutral person so selected or appointed shall be compensated and reimbursed for expenses by the Mediation Board. Any two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named. Compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

claims on behalf of its members to the carrier and prosecuted them through the carrier's grievance procedure. Upon the carrier's rejection of the claims, the union requested the creation of a special adjustment board pursuant to section 153, Second, to arbitrate the claims. The carrier refused to agree to the creation of such a board, and, according to the procedure established by section 153, Second, the union then requested the National Mediation Board to appoint a carrier representative to sit with the union representative on the special adjustment board. Following the inability of the union and carrier representative to agree, the National Mediation Board appointed a third and procedural member. Hearings were held before the board, and subsequently the board rendered a decision holding that it had jurisdiction over the grievances. Prior to any determination on the merits, the Brotherhood of Locomotive Engineers brought an action in the district court seeking a declaration that the Firemen's Union, the carrier, and the National Mediation Board were without authority to convene a special adjustment board, and for an injunction against the exercise by the board of subject matter jurisdiction. The United States District Court for the District of Colorado sustained its own jurisdiction to review, confirmed subject matter jurisdiction of the special adjustment board, and dismissed the Engineers' Union's action for failure to state a claim for injunctive relief. 411 F.2d at 1117.

In affirming the holding of the district court, the Tenth Circuit Court of Appeals, after stating that no question of judicial review had been raised on appeal, noted:

But we should not exercise our injunctive powers to interfere with the establishment of the special board and the exercise of its jurisdiction unless it is made to appear that the invocation of the board was clearly unauthorized and that the exercise of subject matter jurisdiction would leave the Appellant without remedy. 411 F.2d at 1117.

The court reasoned that the Engineers' Union could avail itself of judicial review when the special board of adjustment rendered its award on the merits.

In the course of its opinion, the court made several observations which are relevant to the issues presented in the instant case:

The declared purpose of the 1966 amendment was to relieve the congestion in the dockets of at least two of the four divisions of the N.R.A.B. House Report No. 1114, 89th Congress, First Session p. 3, and Senate Report No. 1201, 89th Congress, Second Session, 1966 U.S.Code Congressional and Administrative News, pp. 2285–2286. To achieve this purpose *the special adjustment board machinery was established as a mandatory arbitration alternative to the N.R.A.B.* And we should not frustrate the primary legislative purpose by unduly limiting the availability of this machinery designed as it was to expedite grievance settlements hopelessly in arrears. *Id.* at 1118. (Emphasis added).

While recognizing that the issue before the court in *Brotherhood of Locomotive Eng.* differs from that under consideration here, the above rationale of the Court of Appeals is persuasive as to the issues presented in this case.

Consistent with the Congressional purpose in enacting section 153, Second, as evidenced by the legislative history, 2 U.S.Code Cong. & Admin.News, pp. 2285, 2286 (1966), and reading the sections of the statute as a whole, Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Internat'l, 373 F.2d 136, 142 (8th Cir. 1967), the court is compelled to the conclusion that judicial review of the awards of such boards is to be coextensive with that accorded to the courts in reviewing awards of the Adjustment Board. *Cf.* Slagley v. Illinois Central Railroad Co., 397 F.2d 546, 550–551 (7th Cir. 1968). The contrary conclusion, in-

timated by some courts, Brotherhood of Ry., Airline & S. Clerks, Etc. v. Special Board of Adj. No. 605, 286 F.Supp. 397 (N.D.Ill.1968), aff'd, 410 F.2d 520 (7th Cir. 1969), that there is to be no judicial review of the awards of special boards of adjustment, would raise serious constitutional questions. *Cf.* International Ass'n of Mach. & Aerospace Wkrs. A.F.L.–C.I.O. v. National Med. Bd., 425 F.2d 527, 537 (D.C. Cir. 1970).

Transportation-Communication Emp. Union v. St. Louis-San Francisco R. Co., *supra*, is direct authority for this holding. The court there stated:

> The Railway Labor Act, 45 U.S.C. § 151, et seq., was amended in 1966. Among the provisions amended are those under consideration, 45 U.S.C. § 153, First, (p) and (q), and 45 U.S.C. § 153, Second. The legislative history of the 1966 amendments indicates conclusively that Congress intended for the United States district courts to have jurisdiction to review the awards of the boards created by agreement of the parties under 45 U.S.C. § 153, Second, to the same extent that the district courts were granted jurisdiction to review orders of the Adjustment Board under 45 U.S.C. § 153, First, (p) and (q). 296 F.Supp. at 509).

The Senate report considering the 1966 amendment to the Railway Labor Act, which recommended passage of the bill, stated:

> The bill also provides that judicial review of orders of the National Railroad Adjustment Board, *and of boards established under this legislation,* relating to minor disputes in the railroad industry would be available to either party but limited to the determination of questions traditionally involved in arbitration legislation—whether the tribunal had jurisdiction of the subject, whether the statutory requirements were complied with, and whether there was fraud or corruption on

the part of a member of the tribunal. (emphasis added).

S.Rep.No. 1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S.Code Cong. & Admin. News, p. 2289 (1966).

Section 153, First, provides that the award of the Adjustment Board may be set aside only for: failure to comply with the provisions of the Act; failure of the order to conform, or confine itself, to matters within the scope of the board's jurisdiction; or for fraud or corruption by a member of the division making the order. *See, e. g.,* Brotherhood of Railroad Trainmen v. Denver & R.G.W.R. Co., 370 F.2d 833 (10th Cir. 1966); Brotherhood of Railroad Signalmen v. Chicago, M., St. P. & P.R. Co., 284 F. Supp. 401 (N.D.Ill.1968). In these proceedings plaintiff challenges the jurisdiction of the board, its position being that the collective bargaining agreement provides only for review by the National Railway Adjustment Board, and, being an enforceable contract, must be adhered to by the Union. While the scope of judicial review is severely truncated under the Act, the power to examine board jurisdiction is preserved. Brotherhood of Locomotive Eng. v. Denver & R.G.W. R. Co., 290 F.Supp. 612 (D.Colo.1968), aff'd, 411 F.2d 1115 (10th Cir. 1969); Brotherhood of Railroad Trainmen v. Denver & R.G.W.R. Co., 370 F.2d 833 (10th Cir. 1966), cert. denied, 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967). *Cf.* Thorgeirsson v. Trans World Airlines, Inc., 288 F.Supp. 71 (S. D.N.Y.1968).[3] *See generally,* Comment, Review of Adjustment Board Awards Under the Railway Labor Act, 34 J.Air L. & Com. 233 (1961).

The labor agreement in effect between plaintiff and the union provides in Article 4, section 3:

> (a) When an employee has been disciplined, suspended or discharged and desires a hearing in regard thereto, he shall make written request therefore, such request to be delivered to the

---

3. *But see* United States v. Feaster, 410 F.2d 1354 (5th Cir. 1969), holding that a jurisdictional award is not yet ripe for judicial determination.

General Manager of the Company within ten (10) days of the date on which he was disciplined, suspended or discharged. If such request for hearing is not delivered to the Company's General Manager within the ten (10) day period, the employee thereby waives his rights to any hearing or appeals in regard to the action taken against him.

(d) All claims or grievances involved in a decision by the President of the Company shall be barred unless within ninety (90) days from the date of the President's decision proceedings are instituted by the employee or his duly authorized representative before the appropriate division of the National Railroad Adjustment Board * * *.

■ The agreement provides that proceedings may be instituted before the National Railroad Adjustment Board. It makes no mention of proceedings before a special board of adjustment. Plaintiff argues that this agreement should be interpreted to mean that an aggrieved employee's sole remedy is before the Adjustment Board and that the union waived the right to proceed before a special board of adjustment. This, however, is too constrained an interpretation. The agreement does not explicitly deny recourse to a special board of adjustment and the court, absent any evidence as to the intention of the parties, is not justified in holding that the reference to the Adjustment Board implies a waiver of recourse before a special board of adjustment.

■ This interpretation is consistent with the statutory language and Congressional intent. 45 U.S.C. § 153, Second, empowers one or both parties to a minor dispute to convene a special board of adjustment "to resolve disputes *otherwise referable to the Adjustment Board.*" The legislative history of this section and the clear language above makes it

abundantly clear that the jurisdiction of special boards of adjustment is coextensive with that of the Adjustment Board. Slagley v. Illinois Central Railroad Co., *supra*; Kansas City Southern Ry. Co. v. Brotherhood of Rail. Train., 305 F.Supp. 1142 (W.D.Mo.1969) (*dictum*); Chicago, R. I. & P. Ry. Co. v. National Mediation Board, 307 F.Supp. 417 (N.D.Ill.1969); Transportation-Communication Emp. Union v. St. Louis-San Francisco R. Co., *supra*. Section 153, Second, merely provides for an alternative method for the expeditious settlement of minor disputes. This section was added in 1966 for the expressed purpose of alleviating the backlog of undecided claims pending before the National Railway Adjustment Board. Antonelli v. Lehigh Coal & Navigation Co., 47 F.R.D. 198 (E.D.Pa.1969); 2 U.S. Code Cong. & Admin.News, pp. 2285, 2286 (1966). To hold that the union could not avail itself of this procedure because of an ambiguous reference in the collective bargaining agreement to the Adjustment Board would defeat Congress' very purpose in enacting this section.

■ It is plaintiff's contention that the parties to the labor agreement intended to limit the right of review to the Adjustment Board, but no evidence was introduced to demonstrate this. At the time the agreement was entered into, there was available to the parties two avenues of statutory review—before the Adjustment Board under section 153, First, or before a special board of adjustment under section 153, Second. The agreement is capable of an interpretation which would accord both of these avenues to the parties. This is the more sensible interpretation of the provision in question.

Even if it was the intention of the parties to the labor agreement to limit the parties to proceedings before the Adjustment Board, this court could not give effect to such a provision. The admin-

istrative grievance procedure set up under the Railway Labor Act is a mandatory, compulsory, exclusive, and comprehensive system for resolving minor disputes. Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R., 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Dominguez v. National Airlines, Inc., 279 F.Supp. 392 (S.D.N.Y. 1968). It has been held that the right to proceed before the Adjustment Board, being statutory, could not be nullified by agreement between the parties. Slagley v. Illinois Central Railroad Co., *supra*; Johnston v. Interstate Railroad, 303 F. Supp. 138 (W.D.Va.1969); Dominguez v. National Airlines, Inc., *supra*. *Cf.* Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). In the original 1926 Railway Labor Act, Congress did not create the National Railroad Adjustment Board or make the use of such agency compulsory. This proved to be unworkable and the dissatisfaction with existing procedures resulted in the 1934 amendments which drastically altered the scheme of the Act. The National Railroad Adjustment Board was created and participation before the Board was made compulsory. *See* Union Pacific R.R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); Brotherhood of Rail. Tr. v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Elgin, J. & E. Ry. Co. v. Burley, *supra*. The rights under section 153, Second, are coextensive with the rights under section 153, First. It is but logical to conclude that the parties cannot abridge the right of review before a special board of adjustment any more than they can before the Adjustment Board.

Since Public Law Board No. 506 was properly invoked under the provisions of 45 U.S.C. § 153, Second, and since the Board did not exceed its jurisdiction, defendants' motion to dismiss must be granted.