Submit order on notice.

**W. E. McCONNELL, Petitioner,**

v.

**The ALABAMA GREAT SOUTHERN RAILROAD COMPANY, Respondent.**

**Civ. A. No. E76–34(R).**

United States District Court, S. D. Mississippi, E. D.

Dec. 28, 1976.

Lawrence W. Rabb, Meridian, Miss., for plaintiff.

Tally D. Riddell, Quitman, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

W. E. McConnell, a resident of Kemper County, Mississippi, formerly employed by The Alabama Great Southern Railroad Company (AGS) as a locomotive engineer, filed this action seeking this Court's review of Award No. 12 in Case No. 60, issued on August 9, 1975, by Public Law Board No. 1261, which sustained the decision of AGS in terminating the petitioner's employment for violating Rule G of the carrier's Operating Rules on January 18, 1973. Jurisdiction was invoked by virtue of the provisions of the Railway Labor Act, Title 45 U.S.C. § 153 First (q).

Following discovery, AGS filed a motion for summary judgment on the grounds that petitioner has failed to establish any of the requisite grounds for review under the Railway Labor Act, as specified in 45 U.S.C. § 153, et seq., relying on petitioner's depositions, and the affidavits of Nicholas H. Zumas and Thomas Parker, Jr.

In his brief in opposition to the motion for summary judgment, petitioner has incorporated his own motion for summary judgment. Although this motion is not of record, in view of the Court's treatment of respondent's motion, petitioner's motion will be denied.

The Court has reviewed the pleadings, all the discovery matter, the record of the proceedings before Public Law Board No. 1261 in case No. 60, the Board's award, and the affidavits, all on file herein, and is convinced, under the narrow confines of its authority to review the Board's award, that it should be affirmed. Thus the Court grants respondent's motion for summary judgment.

Petitioner claimed that on the evening of January 18, 1973, he reported for duty in New Orleans, Louisiana, to operate Train No. 3/222 from New Orleans to Meridian, Mississippi. Upon arrival of the train at Richburg, Mississippi, Road Foreman W. J. Chandler boarded the engine to discuss a "double-heading" procedure with petitioner resulting from an incident of a few days before. During the discussion Chandler charged petitioner with being under the influence of intoxicants in violation of said Rule G which reads as follows:

"An employee who reports for duty under the influence of alcohol or other intoxicant, an amphetamine, a narcotic drug, a hallucinogenic drug, or a derivative or combination of any of these, or who uses any of the foregoing while on duty, will be dismissed. Use of or being under the influence of any of the foregoing while on Company property or equipment is cause for discipline. (Effective March 10, 1972)."

Petitioner denied the charge. Nonetheless, at approximately 4:50 a. m., January 19, 1973, he was suspended from service by Trainmaster J. L. Vittetoe at Richburg. The carrier conducted an investigative hearing at which petitioner, his union representative and his witnesses were present and with the opportunity for petitioner to participate fully. These proceedings were transcribed. The petitioner was discharged from service on February 2, 1973. He processed his grievance in accordance with Article 32 of the bargaining agreement between AGS and the Brotherhood of Locomotive Engineers (BLE). No adjustment having been reached, the dispute was submitted to Public Law Board, No. 1261 by the union on behalf of petitioner. AGS responded to this submission. A hearing before this board was postponed twice upon the failure of the neutral member to appear. Upon the designation of a new neutral member, Nicholas H. Zumas, the Board held sessions as scheduled and on August 9, 1975, rendered an award denying petitioner's claim for rein-

statement, unimpaired seniority and back pay. This award reads as follows:

"FINDINGS:

"Substantial and probative evidence found in the transcript of the investigation. supports the conclusion that the Claimant in this case was in violation of Rule G of the Carrier's Operating Rules while on duty as locomotive engineer on January 18, 1973. This is not the first time that the Claimant in this case has been before an impartial tribunal asking for restoration to the service of the Carrier after he had been discharged for violation of Rule G.

"The Claimant was restored to service without pay for the time lost by Award 17016 of the First Division even though the Board said in part that the employee was guilty of violation of Rule G. He was given a second chance. However, the record of this employee's performance through the years does not warrant a third chance and we find no reason to disturb the discipline assessed by the Carrier."

Of the three members of the Board, namely the carrier member, the BLE member and the neutral member, all three unanimously denied petitioner's claim.

McConnell, in his petition for review, charges that (1) Public Law Board No. 1261 did not comply with the requirements of the Act for an early hearing; (2) when a hearing was held and the award entered, the award was not based on the record, but on ex parte and extraneous complaints made in the carrier's submission; (3) the findings in the award are ambiguous and confusing as the only previous allegation of a Rule G violation was the matter favorably disposed of in petitioner's behalf by the National Railroad Adjustment Board on May 18, 1955, in Award No. 17016, and the findings imply two previous charges under Rule G whereas in fact there has never been but one prior charge of a violation of Rule G; (4) the findings went beyond the record, relied on a false assumption, and the Board failed to confine itself to matters within the scope of its jurisdiction; and (5) the award

constituted a capricious, arbitrary, excessive and unjust penalty to an employee whose employment with AGS began in 1941. By an amendment to his petition, petitioner also charged that the award violated procedural and substantive due process in that the record of the proceedings forwarded to the Clerk of this Court by the National Mediation Board did not contain a transcript of the carrier's investigative hearing, and, presumptively, the neutral member of the board did not, therefore, consider the facts appearing in the transcript as he was required to do by law and due process.

In this connection the affidavit of Neutral Member Zumas, dated June 24, 1976, in support of respondent's motion for summary judgment, refers to his attached letter of June 10, 1976, to Roy J. Carvatta, Staff Director of Grievances, National Mediation Board, in which Zumas acknowledged that in forwarding the Board's record of McConnell's hearing, the transcript of the carrier's "on-the-property" investigation, attached to BLE's submission on behalf of McConnell, was omitted through oversight. With his letter of June 10, 1976, Zumas also attached a copy of said transcript to Carvatta to be forwarded by the Clerk as evidenced by his file stamp dated June 17, 1976. Also in his letter to Carvatta, Zumas acknowledged that the transcript was a part of the record which was considered by the Board when McConnell's case came before it.

At such time as an employee is aggrieved by the terms of an award made by the National Railroad Adjustment Board, and elects to seek a court review of same, 45 U.S.C. § 153, First (q) requires the court clerk to transmit a copy of the petition to the Adjustment Board following which the Adjustment Board is required to file in the court the record of the proceedings on which it based its action. In a letter on file herein, Mr. Carvatta, on behalf of the National Mediation Board, acknowledged receipt of a copy of the petition and forwarded to the court clerk a copy of Award No. 12 rendered by Public Law Board No. 1261 on McConnell's claim, together with the carrier's and employee's submissions. The

omission of the transcript of the carrier's investigation has been remedied as evidenced· by Carvatta's letter of June 17, 1976, on file herein, forwarding a copy of the transcript to the Clerk. The Court is satisfied, by virtue of Zumas' uncontroverted affidavit, that the transcript was considered by the Board in making its award, and thus finds no merit in petitioner's amended charge that Zumas, the neutral member, presumptively did not consider the facts appearing in the transcript.

Title 45 U.S.C. § 153, First, provides for the establishment of the National Railroad Adjustment Board with a First Division of said Adjustment Board to have jurisdiction over disputes involving locomotive engineers. Section 153, First (q) sets out the limitations pertaining to a court review of the orders of any division of the Adjustment Board, stating that on such a review, "the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

Title 45 U.S.C. § 153, Second, provides that "Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section." This section also provides that awards made by such system, group or regional boards of adjustment shall be final and binding upon both parties to the dispute, and if in favor of the petitioner, shall direct the other party to comply therewith. The section further provides that compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

The Court notes that this section contains no provision for a court review of awards made by a board created by Section 153, Second, limiting court participation to the enforcement of such awards.

As a part of the record forwarded by the National Mediation Board to the court clerk is a copy of an agreement between a number of railway carriers, including AGS, and BLE, establishing a special adjustment board, to be known as a Public Law Board No. _____, pursuant to Section 3, Second, of the Railway Labor Act, 45 U.S.C. § 153, Second. The agreement limits the jurisdiction of said board to an attached list of grievances, also providing that they are only those on which a decision has been rendered by the highest officer designated to handle such grievances or that have been pending before the National Railroad Adjustment Board, NRAB, for twelve months from the date the grievance was received by NRAB. The agreement provides for the Public Law Board to consist of three members, one selected by the carrier, one by BLE, and a third member, known as the neutral member, to be selected by the parties to the agreement, failing which either party member may request the National Meditation Board to appoint a neutral member. The agreement provides that the Public Law Board shall hold hearings on each grievance submitted to it with the right of each party to submit supporting evidence, argument, and responses, following which the board shall make findings of fact and render an award on each case submitted to it within 30 days after the close of the hearing as to each claim. The findings and awards shall be in writing with copies furnished to each party. The agreement provides that the awards shall be final and binding, subject to the provisions of Section 3 of the Railway Labor Act, as amended. Each member of the board

shall have one vote and any two members shall be competent to render an award and make any division which the board is empowered to make by statute or by the agreement. The board shall continue in existence until it has disposed of all claims and grievances submitted to it under the agreement, and, lastly, the agreement provides that copies of the award, together with the record of the proceedings upon which the awards are based, shall be forwarded by the neutral member to the Administrative Officer of the NRAB for filing and handling under the provisions of the Railway Labor Act, as amended.

Although this particular agreement left blank the number of the Public Law Board established thereby, and the attached list of grievances did not include that of McConnell, the Court, for the purposes of this case, assumes that Public Law Board No. 1261, which heard and rendered its findings and its Award No. 12 on McConnell's claim, was established by a similar agreement. On this assumption, the first issue before the Court is whether this Court has any jurisdiction to review Award No. 12 rendered by Public Law Board No. 1261. If in the affirmative, does the Court have authority, in reviewing the award, to set it aside, in whole or in part, or remand it to a board (which may have expired) for only any one of the three reasons prescribed by Section 153, First (q), or under the ruling of any cases which may have determined other grounds for setting aside awards by either a division of NRAB under Section 153, First (q), or of a board established under Section 153, Second? Although AGS, in its pleadings, raises the question of jurisdiction generally, it has not addressed itself to the jurisdictional questions raised by the Court. On the other hand, petitioner, in his pleading, seeks a review specifically under Section 153, First (q), and it is to petitioner's claims under this section that AGS maintains it is entitled to summary judgment. No decision in this circuit has been called to the attention of this Court finding that a district court has jurisdiction to review an award made by a board under Section 153, Second, in the same manner as it may review an award of a division of NRAB under Section 153, First (q). However, there is authority both ways from other circuits. Such cases are referred to by petitioner in annotated notes, 9 A.L.R. Fed. 533, "Judicial Enforcement or Review of Decisions of National Railroad Adjustment Board Under 45 U.S.C. § 153 First, (p) and (q), or of Special Adjustment Board Under 45 U.S.C. § 153 Second." Cited therein is *Brotherhood of Locomotive Engineers v. Denver & R.G.W.R. Co.* (1969, CA10 Colo.), 411 F.2d 1115, which held that orders of the special boards were subject to the same review provisions that applied to orders and awards of NRAB. In *Baltimore & Annapolis R. Co. v. National Mediation Board*, (1970, DC Md.) 321 F.Supp. 51, the Court determined that a special board of adjustment had correctly established its jurisdiction over the wage claims in dispute, and that the terms of the collective bargaining agreement existing between the employer and the union could not operate to limit review of disputes to NRAB, but that the special board of adjustment had the power to render awards in the dispute notwithstanding the silence of the collective bargaining agreement in that regard. The court reasoned that a remedy before the special board was consistent with the legislative history and the statutory language of Section 153, Second, and that any other holding would frustrate the purpose of Congress in enacting it. See also *Transportation—Communication Employees Union v. St. Louis—San Francisco R. Co.* (1968, DC Mo.), 296 F.Supp. 507, app. dismd. (CA8) 419 F.2d 933, cert. den. 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45, wherein the court determined that it was within its authority to review decisions handed down by a special board of adjustment known as "Public Law Board No. 34", since such boards were subject to the judicial review of Section 153 First (p) and (q), under the limited jurisdiction of those sections. And see *Switchmen's Union of North America v. Clinchfield R. Co.* (1969, DC Tenn.), 310 F.Supp. 606, aff'd *United Trans. Union v. Clinchfield R. Co.* (CA6) 427 F.2d 161, cert. den.

400 U.S. 824, 91 S.Ct. 48, 27 L.Ed.2d 53, holding that awards of special adjustment boards created pursuant to Section 153, Second, were to be enforced "in the same manner and subject to the same proceedings for enforcement of compliance" as had been provided for enforcement of compliance with awards of NRAB under Section 153, First (p) and (q).

On the other hand, *Bro. of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees v. Special Board of Adjustment* (1969, CA7 Ill.), 410 F.2d 520, cert. den. 396 U.S. 887, 90 S.Ct. 177, 24 L.Ed.2d 162, held that under subsection (q) of the statute there could be no review of decisions of the "special board of adjustment" which was created by contract because the particular body was merely a creature of private contract between the parties and was not a creature of the Railway Labor Act. In this decision the appellate court affirmed the granting by the district court of a summary judgment in favor of the defendant and the lower court's holding that it was without jurisdiction to review the award in question.

Turning to the case at hand, the Court finds that Public Law Board No. 1261 was established by agreement of the parties specifically under the authority of Section 153, Second, and, if that agreement is identical to the Public Law Board established in the agreement forwarded by Carvatta, the Executive Secretary of the National Mediation Board, to the clerk of this court, then it was not only the intent of the agreement to establish a special adjustment board will. full and final authority to handle and dispose of grievances pursuant to the authority of 45 U.S.C. Section 153, Second, with not only the right to seek enforcement of an award under Section 153, Second, but also with the right of the judicial review afforded under Section 153, First (q), and the agreement so provides in the following language: "Such awards shall be final and binding on both parties to the dispute subject to the provisions of Section 3 of the Railway Labor Act, as amended, . . .".

In *Bro. of Railway, etc. v. Special Board of Adjustment*, supra, the court, after commenting that the plain wording of Section 153, First (q) relates only to statutory boards, held that the special adjustment board therein was not a statutory board but solely the product of a contract between private parties, being a common law board of arbitration established by parties who happened otherwise to be subject to the Act. It further held that even though the creation of the board was sanctioned by the Act, it was not a statutory board and therefore was not subject to the review provision of Section 153, First (q).

The distinction in that case and the one sub judice is that the parties here agreed that the final awards of the Public Law Board would be subject to Section 3 of the Railway Labor Act, not just to Section 3, Second, but to both Section 3, First (q) as well as Section 3, Second.

 Turning to the limited review available to this Court under Section 3, First (q) of the Act, the scope of the judicial review is "among the narrowest known to the law." The court may not substitute its judgment for that of the arbitration board. It need not inquire whether substantial evidence supports the board's awards. The findings and order of the board are "conclusive". See *Diamond v. Terminal Railway Alabama State Docks* (1970 CA5 Ala.), 421 F.2d 228. In Diamond, the Appellate Court stated that the review is limited to (1) failure of the board to comply with the Act; (2) fraud or corruption; and (3) failure of the order or award to conform or confine itself to matters within the board's jurisdiction. Equated with the last limitation is if the award is without foundation in reason or fact. See *Bro. of Railroad Trainmen v. Central of Georgia Ry. Co.* (1969 CA5 Ga.), 415 F.2d 403. Prior to the decision in Diamond, the Fifth Circuit Court of Appeals issued its decision in *So. Pacific Co. v. Wilson* (1967 CA5) 378 F.2d 533 which states in effect that a judicial review may be had where it is claimed that the board acted unconstitutionally in the conduct of its hearing.

Petitioner's claims must be read in the light of these decisions. In his brief petitioner claims that his due process rights were violated when the board in its findings relied on the findings and award of an earlier board, Public Law Board No. 17016, which had adjusted a grievance in which McConnell had been charged by his employer with a Rule G violation. The Court notes, however, that the findings of Public Law Board No. 1261, after hearing the grievance involved herein stated: "Substantial and probative evidence found in the transcript of the investigation supports the conclusion that the Claimant in this case was in violation of Rule G of the Carrier's Operating Rules while on duty as locomotive engineer on January 18, 1973. The fact that Public Law Board No. 17016 ordered petitioner's reinstatement without pay was alluded to by the present board only in the context of petitioner's having been given a second chance, and, following the incident occurring during the night of January 18, 1973, the present board found he was not entitled to a third chance. This does not alter the fact that the present board based its findings on the transcript of the investigative hearing conducted by the carrier, and which transcript the Court earlier herein found was before the three member board and considered by it as well as the written submissions of both petitioner and the carrier who quoted extensively from this transcript.

The petitioner did not otherwise press his claims set out in his petition and which were listed above. Suffice it to say petitioner has not charged any member of the board with fraud or corruption. The delay necessitating the designation of a new neutral member was not caused by the respondent. Nor has the petitioner shown in any particular that the board failed to comply with the Act. The Court notes that the three member board was constituted in accord with the agreement between the parties and gave both parties ample opportunity to submit their sides of the dispute to that board. In this connection, the 77 page investigative hearing conducted by AGS afforded petitioner every opportunity to be heard through himself and through his witnesses. He had union representation and conceded that the hearing was conducted fairly. Neither at this hearing nor the one before the Public Law Board was he denied due process. The Court has reviewed the transcript of the carrier's investigative hearing and finds that the board had ample justification for arriving at its decision. It is immaterial whether this Court agrees with the decision.

The Court concludes that petitioner has failed to show wherein this Court has authority under its limited jurisdiction to disturb the award of Public Law Board No. 1261.

Even should the Court be wrong in assuming jurisdiction for the purpose of a judicial review allowed by 45 U.S.C. Section 153, First (q), the Court would not otherwise have jurisdiction, and would be compelled to dismiss the petition. See *Bro. of Railway, etc. v. Special Board of Adjustment*, supra, in which the court found no equitable ground for asserting jurisdiction to review a private arbitration board's award.

Accordingly, the motion of AGS for a summary judgment is sustained, and the Court finds that the petition must be dismissed.

An appropriate order may be submitted with court costs assessed to the petitioner.